CITY OF EMPORIA, *et al.*, v. H. E. NORTON, *et al.*

1. STATUTES; *Validity; Construction.* A law may be so completely at variance with some constitutional provision as to be absolutely and under all circumstances void; or it may be valid as to some classes of cases, and void as to others; or it may be fairly susceptible of two constructions, one of which conflicts while the other harmonizes with the constitution. In the first class of cases, the decisions would be uniformly against the law, and all rights claimed thereunder; in the second, they would vary with the class of the case for which the support of the law was invoked; while in the third, that construction which supports would be preferred to that which destroys the law.

2. CITY CHARTER ACT; *Power to Relevy Taxes.* Section 41 of chapter 100 of the laws of 1872, which purports to grant to cities of the second class power in all cases of insufficient levy or assessment, to relevy and reassess, may be placed in the second class of cases above named. Pur-

porting to cure all defects, it cures all within the power of the legislature to cure. Though containing no restriction on the power to levy taxes, it is not in conflict with ¶5, article 12, of the constitution.

3. LEGISLATIVE POWER; *Curative Acts.* Where the original purpose for which the power of taxation is invoked is one of the ordinary purposes of municipal government, and within the powers granted, and where there is no fraud or oppression in the creation of the debt or burden, and no inequality or injustice in the apportionment of the tax, *held,* that the legislature can by subsequent enactment cure any defect in the proceedings to collect the tax which it could in the first instance by prior enactment have made immaterial.

4. ———— *Relevy of Taxes.* The city of Emporia, a city of the second class, was authorized to improve its streets. It caused one to be curbed, guttered and macadamized. It attempted to assess and collect the cost thereof from the adjoining lots, but failed, owing entirely to the fact that no estimate of the cost had been made by the engineer and submitted to the council prior to the contracts therefor. Subsequently, by general law the legislature authorized a reassessment and relevy by cities of the second class in all cases of prior insufficient assessment and levy: *Held,* that this cured the defect caused by the omission of the estimate, and that the city could proceed to reassess and collect the taxes therefor.

*Error from Chase District Court.*

THIS ACTION was first commenced in Lyon district court in October 1871, by *Norton,* and twelve others, as plaintiffs, against the county clerk and county treasurer of Lyon county, to restrain the collection of assessments levied to pay contractors for macadamizing, curbing and guttering Commercial street in the city of Emporia. *The City of Emporia* was not then a party. In April 1872, judgment was rendered for plaintiffs below, and injunction made perpetual. The case was brought here on error at July Term 1872, and reversed. (10 Kas., 491.) In the meantime the legislature had passed a special act attempting to make valid the assessments in question. (Laws of 1872, p. 13; 10 Kas., 503 to 505.) On June 14th and June 28th, 1872, under § 35 of the new city-charter act passed February 28, 1872, (Laws of 1872, ch. 100,) the city council, by ordinances, provided for issuing "street bonds" to pay the contractors for balance due for the said improvements under their contracts, and immediately thereafter issued the bonds as provided in said ordinances. And

in August following said city council, to pay said contractors, and to meet and pay off the bonds when the same should mature, relevied said special assessments or taxes upon the said plaintiffs' said several lots, under § 41 of said city-charter act. In February 1873, plaintiffs filed amended petition, being *verbatim* the original petition with the addition of the *City of Emporia* and its officers as defendants, to meet the decision of this court in *Gilmore v. Fox*, 10 Kas., 509. The defendants answered, first, a general denial, second, the regularity of proceedings on the part of the city council, including making and submission to council of estimates by city engineer, the special act of the legislature, and the relevy of said assessments. Plaintiffs replied. The cause went to Chase county on change of venue, and was there tried at the October Term 1873. The district court found against defendants, finding that no estimate was made; that all the exhibits attached to defendants' answer were duly executed; that the special act was passed, and referred to the assessments in question; that the relevy was made as alleged, but held the special act void, and that the relevy could not cure the want of such estimate, and therefore rendered judgment against defendants below, making injunction perpetual: to reverse which, defendants bring the case here on error.

*J. Jay Buck,* for plaintiffs in error:

1. The special act of the legislature (Laws 1872, page 13,) made these assessments, as at first levied in 1871, valid and binding, and cured the omission of the engineer's estimate, which is the only omission, error or irregularity found by the court.

I wish to enter upon the discussion of this first point unembarrassed, and therefore refer the court to its former decision herein, (10 Kas., 503,) where I attempted to raise this question, but the court held that the supplemented answer then filed "was a separate and independent pleading," and as it "did not deny any allegations of the plaintiffs' petition," and as "the allegations of the petition were substantially that

certain persons voluntarily and without any authority macadamized, curbed and guttered Commercial street, and that afterward the city authorities levied an assessment on the adjacent or abutting lot-owners to pay for the same, at the time the work was done (according to the allegations of the petition,) neither the city of Emporia nor the lot-owners were liable to pay for the same;" and also to the concluding remarks upon that point—"all that we now decide is, that the legislature cannot pass a special act which will cure all such irregularities." An examination of the present answer will show a denial of *every allegation of the petition*, (except the city's organization,) and the findings will show every legal step taken except the estimate. Hence this "voluntary" and charitable work, *pro bono publico*, evaporates. The allegations of the petition are not only denied in the answer, but are wholly and absolutely disproved by the findings and the exhibits which are a part of the findings, so far as material. (In this connection see *City of New Haven v. Fair Haven & Westfield Rld. Co.*, 38 Conn., 422.)

As it must be conceded that both statutes under which the city claims are within the province and scope of legislation, let us consider the two points upon which the city relies. The special act made these assessments valid: Cooley's Const. Lim., 371, 379; Dillon Mu. Corp., 288; 46 Penn. St., 38; 20 Ohio St., 35; 2 Ark., 527; 7 Nevada, 223; 3 Wall., 327; 33 Conn., 371, 410; 30 Iowa, 9; 31 Ill., 405; 24 Ind., 173; 2 Oregon, 146; 20 Mich., 95; 23 Wis., 93, 590; 19 N. Y., 116, 118; 38 Cal., 366; 13 Minn., 128; 9 Kas., 696. The principle established by these authorities is, that no man can have a vested right in escaping his proportion of equitable tax or assessment; that it is against the policy of the law for him to permanently enjoy such exemption from his share of the public burden; that what the legislature might have dispensed with, it may cure by retroactive legislation; that any ratification by a legislature is good if the original defect is merely lack of legislative consent, and even if it were void *ab initio*. (23 Wis., 590; 27 Wis., 522; 7 Cal., 463; 31

Cal., 26; 21 How., 414.) In the case at bar the "established principle" of taxation was followed and adhered to, the tax was levied for an "authorized purpose," the work was done "according to contract," it was "well done, and done cheaply, and was a valuable and lasting improvement," and the plaintiffs below do not even complain of an unjust tax; hence the injunction should have been dissolved. The city council "are in fact and in law agents for the property owners," and fairly and fully protected the plaintiffs' interests in the premises: 14 Wis., 618; 15 Wis., 9; 17 Wis., 284; and see especially 15 Wal., 547.

This special act violates neither § 17, art. 2, nor § 1, art. 12 of our constitution. While many authorities can be cited, we think the following conclusive, that it is not objectionable as a special act: 21 Ohio St., 14; 17 Cal., 547; 51 Mo., 288; 1 Kas., 178, 273; 2 Kas., 432; 9 Kas., 690; 11 Kas., 23. It does not violate art. 12, § 1: 5 Kas., 603; 6 Kas., 255; 9 Kas., 692; 7 Nevada, 223; 36 Penn. St., 29; 5 Gray, 180; 8 Head, (Tenn.) 317; 6 Dana, 400; 18 Grattan, 514. The only power the city of Emporia ever assumed to exercise in the premises was to improve and make passable the business street of the city, and assess the expenses thereof on the adjoining lots; and that power it has possessed ever since its organization in 1870. This special act does not assume to confer a *new power*, nor an additional power, nor any power, but to legalize the manner of procedure, and waive omissions which had been made in the exercise of a power previously granted, and this it is competent for a legislature to do. If these assessments as first levied in 1871 were invalid, it was not because of any constitutional ground, nor want of power generally, but for "lack of legislative consent," and this consent was given by the special act.

The court finds that the city made the contract as alleged, and that the work was done accordingly, well done, done cheaply, and was a valuable and lasting improvement; hence the city was liable in the first instance. This is not a case of *ultra vires.* Now as the city, under the law of 1868, had full

power (if the estimate had been made,) to do all that it did do, and as the making of an estimate was only necessary because the *legislature* had required it, and was in no sense constitutionally or naturally necessary, it follows that the legislature might waive and cure that defect, and that too without "conferring" any "power" whatever. It will be borne in mind that this is a case where the property was "subject to taxation," the tax a proper and equitable one, and the levy not excessive, and where plaintiffs attempt no equitable showing.

In the former decision in this case it was conceded "that the legislature may in some cases pass special curative laws for corporations." This language cannot mean that the legislature may by special act simply cure irregularities; because mere irregularities will not be noticed by the court in suits to enjoin the collection of taxes. (7 Kas., 231; 8 Kas., 561; 9 Kas., 155; 10 Kas., 37; 11 Kas., 499; 42 Cal., 517; 31 Md., 562.) And to say that the legislature might only cure what the courts would disregard, is equivalent to denying the legislature any "curative" power by special act.

2. The relevy made these assessments legal, valid and binding liens on plaintiffs' lots. It will be remembered that the district court finds "that a relevy of said taxes and assessments was made as alleged in said defendants' said answer;" hence it was made under § 41, Laws 1872, p. 204, and in accordance with the provisions of that section. (See in this connection, *proviso* to § 35, Laws 1872, p. 203, and 4 Kas., 434.) This § 41 certainly covers the want of an estimate, which is the only thing shown at all irregular; and the cases above cited are conclusive that it is within legislative power to enact this section. That the relevy was proper, and cured all defects, see, in addition to the above-cited cases, the following: 36 Cal., 41; 13 N. Y., 140; 23 Iowa, 410; 37 N. Y., 268; 4 Wheat, 428; 34 N. J., 236.

I concede from the "findings" in this case that the levy when made in 1871 for these local improvements was void as to the abutting lot-owners, because the estimate was not made.

But the contracts between the city and contractors were valid; and the contractors could have sued the city on those contracts for the work, according to their terms. It was fully in the power of the city to do just this work, and make just these contracts. It was the city, and not the lot-owners, that these contractors looked to for their pay, and the city has already paid them; and a relevy under said §41 of the new city-charter act was not only valid, but was mere justice to reimburse the city. Of the many reasons which are given by the courts for upholding these reassessments, perhaps that in *Worden v. Fond du Lac Co.*, 14 Wis., 618, is as satisfactory as any, in which case it is said that such tax "is a debt due the government, which the owner of the property has no more right in equity and conscience to withhold than the most sacred debt of a private nature."

*R. M. Ruggles*, for defendants in error:

The plaintiffs in error hang their case, as they themselves state in their brief, on two propositions, viz.: 1st, The special act of the legislature (Laws 1872, page 13,) made these assessments, as at first levied in 1871, valid and binding, and cured the omission of the engineer's estimate, which is the only omission, error or irregularity found by the court; and 2d, The relevy in August, 1872, made these assessments valid and subsisting liens upon the property in question. Of these, in their order.

In order to get a full understanding of the matter, it will be well to refer to the statute in force in 1871 in relation to the necessity for an estimate by the city engineer of the cost of any proposed work before a contract should be let therefor. The section of the statute is as follows—Gen. Stat., p. 169:

"Sec. 31. *Before* the city council shall make any contract for building bridges or sidewalks, or for any work on streets, or for any other work or improvement, an estimate of the cost thereof *shall* be made by the city engineer, and submitted to the council, and no contract shall be entered into for any work or improvement for a price exceeding such estimate, and in advertising for bids for any such work, the council

shall cause the amount of such estimate to be published therewith."

The court below found, as matters of fact, that the city engineer never made any estimate of the cost of the work, and that the contract for the macadamizing was let to Brown, and the contract for the curbing and guttering was let to Champlin. No estimate *ever* having been made by the city engineer, or any one for him, of course it follows that the above contracts for said work were entered into without an estimate being first made. We suppose it cannot be successfully questioned, that the making of an estimate by the city engineer of the cost of the proposed work was *a condition precedent* to the letting of a valid contract—a statutory requirement *absolutely necessary to be performed* in order to form a valid basis for proceedings to subject the property of abutting lot-owners to the cost of doing said work, and without which the contracts for said work, and all proceedings thereafter had in relation to said work, including the levy of the special assessments upon the property of defendants in error to pay for the same, were *absolutely void*, at least so far as the abutting lot-owners were concerned. Indeed, plaintiffs in error impliedly admit such to be the case, but seek to avoid its effect by claiming, 1st, that the special act of 1872 (Laws 1872, page 13,) made the first assessments, levied in 1871, valid and binding; and 2d, that the second assessment, or relevy, made in August, 1872, as they claim under §41, laws 1872, page 204, were valid and binding. As to the effect of the failure to have an estimate made, we refer the court to the case of *City of Leavenworth v. Rankin*, 2 Kas., 357, as being precisely analogous to the case at bar. The court in that case uses this language, (2 Kas., 371:) "When the law prescribes a prerequisite to their (the city council) ability to contract, the obligation to observe it cannot with impunity be disregarded. Nor will a subsequently attempted ratification cure the defect. Such a construction would render nugatory the most salutary safeguards, and in effect make municipal corporations omnipotent. They must contract, if at all, within

the prescribed limits, and according to the prescribed forms."
We suppose that in the case above quoted, and in the case at
bar, the contractors might, *perhaps*, recover on a *quantum
meruit* against the city, not upon the contract, nor under or
by virtue of it, nor the price stipulated in it, nor any other
particular price; but if recovery could be had at all against
the city it should be the value of the benefit of the work to
the city, and because the city had accepted it, and when such
an action is brought the question whether the work was "well
and cheaply done," whether it was "necessary," or whether it
was a "lasting and valuable improvement," will form proper
subjects of investigation, but not till then. We utterly deny
that abutting lot-owners can be made liable, or their property
taken either by taxation or otherwise, unless the forms of law
in force at the time the property is sought to be made subject
to the charge, are at least substantially complied with, when
such forms, as in the present case, go to the very foundation
of the right to incur the liability at all: 23 Wis., 610; 18
Ohio St., 87, 88; 61 Barb., 469.

But it is said by plaintiffs in error that the special act
(Laws of 1872, page 13,) heals and cures the original defect.
To this we answer, first, the legislature had no constitutional
power to pass such an act; and second, the act by its terms
does not purport to attempt to cure the omission of the
city engineer to make an estimate as required by law. It
seems to us clear that said special act is in violation of § 1,
article 12 of our state constitution. That the act in question
is a special act, seems to be beyond all controversy. It refers
to the city of Emporia alone, and to no other city of the
second class in the state. That the above constitutional pro-
vision refers to and embraces cities, is settled by the cases in
4 Kas., 124; 5 Kas., 607; 10 Kas., 491; 9 Kas., 689. Then
the question remains, did the above special act confer corpo-
rate powers? We answer, clearly so. The act in effect says,
that in every other city of the second class in the whole state
of Kansas the city engineer must make an estimate of the
cost of work of the kind in question before a contract for the

37—13 KAS.

performance of it can be entered into, but the city of Emporia can enter into such contract notwithstanding no estimate was ever made, which, as we have before seen, is a condition precedent to the making of any valid contract at all. The proposition that such an act does *not* confer corporate power, is so ridiculous that to state it is its own refutation. ( *Gilmore v. Norton,* 10 Kas., 503.) And as to the power of the legislature to pass such an act, making abutting lot-owners liable, see *Baltimore v. Horn,* 26 Md., 194.

This special act is also in violation of § 17, article 2 of our constitution. In effect it says, that the general statutes of the state in relation to cities of the second class shall have a uniform operation in all and every of such cities throughout the state, *except* in the city of Emporia; and to hold such an act valid is to say that the legislature may, by special act, limit the uniform operation throughout the state of a general law. This proposition also is too ridiculous to be discussed. As to such an act see *Darling v. Rodgers,* 7 Kas., 592; *Gilmore v. Norton,* supra. All the cases cited in plaintiffs' brief, where such acts have been held valid, are in states where there are no such constitutional restrictions as in our state. The learned counsel for plaintiffs in error refers the court particularly to 15 Wallace, 547. That case decides that an injunction will not lie to restrain the collection of a tax on the *sole* ground of the illegality of such tax. And so this court has decided in 2 Kas., 489. And such was and is the equity rule. But after the decision in 2 Kas., 489, and in consequence thereof, such an action is provided for and authorized by express statutory enactment: Civil Code, § 253; (Laws of 1867, ch. 74, § 1.) The counsel also cites several other authorities, noticeable among which is *Beach v. Leahy,* 11 Kas., 23. This case expressly holds that cities, towns and villages are corporations proper, and within the constitutional prohibition in regard to special acts; and just as squarely decides that counties, townships and school districts are merely political subdivisions, and not within the purview of § 1,

article 12, of the constitution. We conclude that the plaintiffs in error "take nothing" by the special act of 1872.

2. Said special act of 1872 only purports to cure "irregularities and omissions" on the part of the mayor and councilmen. That this was not intended to obviate the consequences of a non-performance of a condition precedent, see *Walker v. Potter*, 18 Ohio St., 85. That the legislature only intended to heal irregularities, is further evidenced by a comparison of the language used in said special act, and that in § 41 of the city-charter act providing for a relevy.

3. Now, if we are right in our assumption that the contract under which the work was done was void by reason of no estimate having been made by the city engineer, and if said special act is void, then we suppose it will be conceded that the relevy made in August 1872 was void also, unless the powers given by § 41 of the city-charter act helped the matter out. To give this section the construction claimed by plaintiffs in error, (viz., that no matter how void or illegal, either "for want of sufficient authority, or other cause," a tax or assessment may have been, let the city council make a relevy and the whole thing is cured,) is, as we think, to bring said § 41 in conflict with § 5 of art. 12 of the constitution, and thereby render said section void. That there must be some restriction in any act of the legislature which purports to confer on cities the power of taxation or assessment, has been decided by this court. (*Hines v. City of Leavenworth*, 3 Kas., 204.) If the city council of any city can, by a single relevy, under said § 41, cure any and all defects arising either from "want of sufficient authority, or other cause," then we say there is no restriction. If this court shall hold that that construction or effect claimed by counsel for plaintiffs in error of said § 41 is the correct one, then a city council may disregard all *restrictions*, no matter how wise or salutary, or how well calculated for the protection of the property-owner, and may incur any and all manner of indebtedness, and when the taxpayer objects, and perhaps seeks his remedy in the courts, the council may let the matter rest until the next annual levy,

make a relevy of the void tax, and straightway the whole
thing is cured. Such a doctrine is monstrous, and cannot be
the law. Besides, the learned counsel for plaintiffs in error
is hardly entitled to a patent for his invention in dragging
forth said § 41, to save the relevy. The same provision was
in force in 1871: City-charter act of 1871, ch. 62, Laws
of 1871, § 20. This § 20, at a first glance, does not
seem as broad as said § 41 of the Laws of 1872, by
reason of the omission of the word "assessments" there-
from, yet we find that the word "taxes," as used in
this § 20 of the Laws of 1871, included the word assess-
ments; (*Hines v. City of Leavenworth*, supra;) and that there-
fore said § 20, of the act of 1871 is just as broad in its scope
as said § 41 of the act of 1872. Therefore we find that the
legislature in enacting said § 41 did not intend to enact any
new curative act, but only intended to re-enact an already ex-
isting law. Consequently we see that this same § 41 was in
full force at the time of the first levy and assessment made
by the city to pay for this grading, etc. Therefore we sub-
mit, that as there was just the same power and authority
delegated to the city at the very time this work was done for
the city, and at the time the first assessments were made by
the city to pay for it, as can possibly be claimed to have been
delegated and given to the city by the subsequent enactment
of 1872, it follows, that the logic of the position of plaintiffs
in error upon this point is just this, that though the section of
the constitution above quoted requires the legislature to restrict
the power of cities in reference to "*taxation, assessment, bor-
rowing money, contracting debts and loaning their credit,*" and
that, although the legislature had fixed the restrictions and
limitations provided for by this provision of the constitution
by prohibiting cities from doing these things or any of them
unless they first complied with these restrictions and limita-
tions as conditions precedent, yet, all that was necessary for a
city to do in order to successfully evade this provision of the
constitution and the laws of the legislature enacted for the
purpose of enforcing it was to go on and exercise the power

of taxation, assessment, borrowing money, contracting debts, loaning its credit, with utter disregard to restrictions and limitations placed upon these powers by the constitution and the acts of the legislature, (as was done in the case at bar,) and when these powers had so been exercised in such utter violation of the laws of the land, all that such a city need do would be, in the first instance, to levy a tax or make an assessment to pay the void indebtedness resulting from the exercise of such powers in such an unlimited and unrestricted manner, and then when the taxpayers, against whom these taxes are levied refuse to pay, the city makes a relevy or a reassessment under § 20, page 151 of the Laws of 1871, or § 41 of the Laws of 1872, page 204, and the whole matter becomes at once cured, and the indebtedness made valid, and thus this constitutional provision is successfully evaded. If this be the proper construction of said § 20 of the act of 1871, or § 41 of said act of 1872, or if these sections can be made to operate to produce such a result, then we say that they are in direct conflict with said § 5 of art. 12 of the constitution, whenever such a construction is sought to be given to them, or such a result sought to be produced by their operation, and are of course void to the extent at least of producing such results. (3 Kas., 204; 12 Wis., 616.)

It of course follows as a corollary to the rule laid down by this court in *Hines v. City of Leavenworth,* 3 Kas., 204, that any law passed by the legislature to evade this constitutional provision is absolutely void in so far as it accomplishes such purpose. And that, also, when any construction is sought to be given to any law of the legislature which will have the effect of giving to such law the intention of evading this provision (as is sought to be done by the argument of plaintiffs in error in the case at bar,) such construction will not be given by the courts, or if given, they will be compelled to hold the law unconstitutional. Therefore we submit that the provisions of § 20 of the city-charter act of 1871, re-enacted by § 41, page 204, Laws of 1872, are only valid so far as they apply to cases of assessment or levy of taxes which

were authorized by law in the first instance, but were void by reason of some irregularity or neglect to comply with the law regulating proceedings in such cases, and that as to such cases only can this § 41 make valid a subsequent relevy or assessment. The supreme court of Wisconsin in construing just such a statute as this § 41 in relation to just the same constitutional provision, says: "But it would be a strange abuse of such a statute to say that it would extend to the assessment of a tax which was defective, not on account of mere irregularity in the proceedings, but from an entire want of authority." *Dean v. Charlton*, 23 Wis., 610; *Hopkins v. Mason*, 61 Barb., 469. As we have seen, the city of Emporia not having had the power in the first instance to make these contracts, in utter disregard of the limitations and restrictions imposed upon their contracting power, the contracts when made were *ultra vires*, and this being the case, it follows, as a matter of course, that the first assessments made to pay these contracts were not void by reason of some mere irregularities, but were void because the city had not the power to make these contracts, and therefore not the power to enforce their payment. And we here assert to the court, without fear of contradiction, that the only safety of the inhabitants of cities in this state from oppressive and ruinous taxation lies in the courts adopting as a rule of construction of such statutes as § 41 the rule above quoted from *Dean v. Charlton*, rather than the construction sought to be given by the learned counsel for plaintiffs in error. And this is especially so in such cases as the one at bar, as the right to make these assessments against the defendants is as an asserting of the right to compel a few to pay for that which, if of any benefit at all, is as much a benefit to the whole public as it is to the few, and we submit as a rule in such cases that the assertion of such a right is in derogation of individual rights, and must be strictly construed and rigorously observed, and if there is a failure to comply with any material requirement such failure will make the whole proceedings so absolutely void that

it will be even beyond the power of a legislature to cure such a failure.

The opinion of the court was delivered by

BREWER, J.: In May and June, 1871, the city of Emporia entered into two contracts, one for the curbing and guttering and the other for the macadamizing of Commercial street. The work was done under these contracts, was well and cheaply done, was accepted by the city, and was a valuable and lasting improvement. No estimate of the cost of the work was ever made by the city engineer, or submitted to the city council. In July, 1871, the city attempted to provide for the payment of this work by special assessment on the adjoining lots. At the time of these proceedings the following provision of the statute applicable thereto was in force:

"SEC. 31. Before the city council shall make any contract for building bridges or sidewalks, or for any work on streets, or for any other work or improvement, an estimate of the cost thereof shall be made by the city engineer, and submitted to the council; and no contract shall be entered into for any work or improvement for a price exceeding such estimate; and in advertising for bids for any such work, the council shall cause the amount of such estimate to be published therewith." (Gen. Stat., p. 169, § 31.)

In consequence of the omission of this estimate the proceedings of the city council were without authority, and the collection of the contract-price by the assessments, so far at least as the lots of defendants in error are concerned, was a failure. In 1872 the legislature passed a special act validating these assessments. (Laws of 1872, p. 13, ch. 13.) It also passed a general law for cities of the second class, the 41st section of which is as follows:

" SEC. 41. In case the corporate authorities of any city have attempted to levy any taxes or assessments for improvement, or for the payment of any bonds or other evidence of debt, which taxes, assessments, or bonds are or may have been informal, illegal or void, for the want of sufficient *authority* or other cause, the council of such city at the time fixed for levying general taxes *shall* relevy and reassess any such

assessments or taxes in the manner provided in this act."
(Laws of 1872, p. 204.)

Under this section the city proceeded to make a relevy of
these assessments, and this action was brought to restrain any
further proceedings on the part of the city. The judgment
in the district court was in favor of the lot-owners, and the
city brings the question here for re-examination.

It is conceded that but for the legislation of 1872 the lot-
owners would be entitled to their restraining order; but it is
contended, first, that the special act made valid and legal the
assessment of 1871, and second, that the relevy made the
assessments valid and binding liens on the lots. A consid-
eration of the second question is all that will be necessary,
for it seems to us that the proposition therein contained is
correct. This section was passed after the levy of 1871, and
by its terms is manifestly applicable to a case like the present.
Indeed we do not understand counsel as disputing that it is
within the very letter of the statute, but the contention is,
that to give to this section the sweeping and comprehensive
construction that its language will permit is to bring it into
conflict with § 5 of article 12 of the constitution. That sec-
tion of the constitution is as follows:

"SEC. 5. Provision shall be made by general law for the
organization of cities, towns and villages; and their power
of taxation, assessment, borrowing money, contracting debts
and loaning their credit *shall be so restricted* as to prevent the
abuse of such power." .

Upon this counsel for defendants in error argues—

"That there must be some restriction in any act of the
legislature which purports to confer on cities the power of
taxation or assessment, has been decided by this court; (*Hines
v. City of Leavenworth*, 3 Kas., 204.) If the city council of
any city can, by a simple relevy, under said § 41, cure any
and all defects arising either from 'want of sufficient au-
thority, or other cause,' then we say there is no restriction.
If this court shall hold that the construction or effect claimed
by the counsel for plaintiffs in error of said § 41 is the correct
one, then a city council may disregard all *restrictions*, no mat-
ter how wise or salutary, or how well calculated for the pro-

tection of the property-owner, and may incur any and all manner of indebtedness, and when the taxpayer objects, and perhaps seeks his remedy in the courts, the council may let the matter rest till the next annual levy, make a relevy of the void tax, and straightway the whole thing is cured. Such a doctrine is monstrous, and cannot be the law."

Hence counsel concludes that it is only valid so far as it "applies to cases of assessment or levy of taxes which were authorized by law in the first instance, but were void by reason of some irregularity or neglect to comply with the law regulating proceedings in such cases, and that as to such cases only can this § 41 make valid a subsequent relevy or assessment." It would seem to be conceded by this statement of 1. Statutes; counsel that this section was not intrinsically and validity. Construction. absolutely invalid, but only so in application to certain cases. Now it is well known that a statute may be attacked for unconstitutionality in more than one way. It may be so wholly and directly at variance with some constitutional provision that it is under all circumstances, and in all applications, absolutely void. A law granting a divorce, one reducing the terms of county officers to one year, and one making the state a stockholder in a banking institution, are examples of such void enactments. Again, a legislative act may be entirely valid as to some classes of cases, and clearly void as to others. A law might be void as violating the obligation of existing contracts, but valid as to all contracts which should be entered into subsequent to its passage, and which would therefore have no legal force except such as the law itself would allow. (Cooley's Const. Lim., 180.) And again, an act may be fairly susceptible of two constructions, one of which conflicts while the other is in harmony with the constitution. In the first case, the decision would be uniformly against the law, and all rights claimed to be derived therefrom. In the second, the decisions would vary according to the circumstances of the particular case for which the support of the law was invoked; while in the third, that construction which supports would be preferred to that which

2. City-charter  destroys the law.   It seems to us that this section
act of 1872,
§41.          may be placed in the second class; that it is valid
as applicable to certain cases, and invalid as to others.   It
purports to authorize a relevy in all cases of a prior insuffi-
cient levy.   It is thus curative in its nature.   But there are
some things beyond the power of cure.   As to these, it is
3. Curative          invalid and inoperative.   But purporting to
laws.          cure all, it cures all within the power of cure.
Nor should we look to this section for the restrictions
contemplated by the section of the constitution heretofore
quoted, but rather to the original act by which the power
to levy was granted.   If there were no sufficient restric-
tions in that, then that act was void, and there was *ab
initio* a failure of power.   But we should not expect to find
in a merely curative act limitations and restrictions on an
original grant of power.   But what defects may a legislature
cure? and is the defect in this case within the power of cure?
Two or three things may be remarked.   The original pur-
pose for which the power of taxation was invoked was not
one of the extraordinary, but one of the common purposes of
municipal government.   It was for the purpose of improving
one of the thoroughfares of the city.   As to the difference, if
any, which exists between those two classes of cases, in the
extent of the power to cure, see *Hasbrouck v. Milwaukee*, 13
Wis., 37, and the comments thereon, in the same court, by
Chief Justice Dixon in the subsequent case of *Mills v. Charle-
ton*, 29 Wis., 413; and see also Cooley's Const. Lim., page
380, and note.   Again, there is nothing inequitable in sub-
jecting these lots to the payment of this assessment.   The
work, as it appears from the findings, was well and cheaply
done, and was a lasting and valuable improvement.   There
was no fraud in the making of the contracts by which exces-
sive and unjust burdens were imposed.   There is no inequity
in casting the burden of a street improvement upon the ad-
joining lots.   There was no partiality or oppression in the
appraisement of those lots.   In fact, nothing appears to in-
validate the proceedings except the mere omission of the

engineer's estimate. Again, this defect was one as to a matter which might have been omitted by the legislature in the first instance. There is nothing in the nature of things which requires that an estimate of the cost be made prior to the letting of the contract and the doing of the work. It may be a very proper precaution, but it is within the unquestioned power of the legislature to authorize such improvements without it. "If the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute." (Cooley's Const. Lim., 371.) In *May v. Holdridge,* 23 Wis., 93, Paine, J., says: "This rule must of course be understood with its proper restrictions. The work for which the tax is sought to be assessed must be of such a character that the legislature is authorized to provide for it by taxation. The method adopted must be liable to no constitutional objection. It must be such as the legislature might originally have authorized, had it seen fit. With these restrictions, where work of this character has been done, I think it competent for the legislature to supply a defect of authority in the original proceedings, to adopt and ratify the improvement, and to provide for a reassessment of the tax to pay for it." In *Mills v. Charleton,* 29 Wis., 400, Dixon, C. J., referring to this case says: "It will be seen by examining the facts in *May v. Holdridge,* as stated on pages 95 and 96 of the report, that the original proceedings were as *void* for want of authority in the aldermen, as it is possible to conceive the original proceedings to have been here; and yet the power of the legislature to legalize and authorize the reassessments was upheld. * * * The principle upon which these and other similar decisions rest, is, that the taxing power, when acting within its legitimate sphere, and unrestrained by positive constitutional provisions, is a far-reaching and unlimited power, which knows no stopping place nor moderation of force until it has accomplished the purpose for which it exists, namely, the actual enforcement

and collection of the tax. It moves constantly forward to its object until that is accomplished, and, if turned aside by any obstacles or impediments, may again and again return to the same tax or assessment, until, the way being clear, the tax is paid or the assessment collected." See also, *Thomas v. Leland*, 24 Wend., 65; *Town of Guilford v. Supervisors Chenango Co.*, 13 N. Y., 143; *Brewster v. Syracuse*, 19 N. Y., 116; *Grin v. Weissenbury School District*, 57 Penn. St., 433; *Musselman v. City of Logansport*, 29 Ind., 533; *Howell v. City of Buffalo*, 37 N. Y., 267; *State, ex rel., v. Mayor, &c.*, 34 N. J., 236; *Dean v. Boochsenims*, 30 Wis., 236; *The People v. Halladay*, 25 Cal., 300; *Brevoort v. Detroit*, 24 Mich., 322. In this last case, noticing the objections to the reassessment, the court says: "One is, that the original assessment being void there was no constitutional power in the legislature to order a reassessment. This however may depend upon the nature of the original infirmity. If the difficulty there was, that the sums assessed did not constitute any just or equitable charge for public purposes upon the property upon which it was sought to be imposed, it is quite clear that the legislature could not make it such a charge. But if the defect consisted in some irregularity of proceeding, or in some oversight in the law itself, in consequence of which a just and equitable claim had failed to be *legally* imposed, there could be no good reason why the legislature should not retrospectively supply the omission or cure the irregularity."

The case may then be summed up thus: The city had the power to make these improvements. They were among the ordinary objects of municipal government. It is equitable that the adjoining lots should bear the burden of such improvements. There was no fraud in the contracts, no excessive, oppressive, expenditures made. There was no inequality or injustice in the apportionment. The defect was on a matter which the legislature might have dispensed with in the first instance. It was therefore a defect which by subsequent enactment a legislature could cure—and a general act authorizing in all cases of insufficient assessment

and levy a reassessment and relevy, is applicable to and cures this defect.

The judgment of the district court will be reversed, and the case remanded for further proceedings in conformity to the views herein expressed.

All the Justices concurring.