WASHINGTON MASON, *et al.*, v. CHARLES F. SPENCER,
*County Clerk, et al.*

1. CONSTITUTIONAL LAW; *Valid Statute.* Section 2, chapter 95 of the
Laws of 1885, attempting to cure irregularities in the construction
of sewers in cities of the first class, is constitutional and valid.

2. ———— *Curative Statute.* Where an irregularity rendering an act
of a city or subordinate agency illegal or void is simply a failure to
comply with some provision of the statutes, the compliance with
which the legislature might in advance have dispensed with, the
legislature can, by a general curative statute subsequently passed,
dispense with such compliance and thereby render the act of the
city or subordinate agency legal and valid.

3. SEWER TAXES; *Apportionment.* Where sewer taxes in a city are levied
in accordance with the value of the lots without the improvements
thereon, *held*, that such rule of apportionment of the taxes is valid.

*Error from Shawnee Superior Court.*

ACTION brought by *Washington Mason* and seventy-nine
others, against *Charles F. Spencer*, as county clerk, and others,
to enjoin the defendants from collecting certain sewer taxes
levied by the city of Topeka. The amended petition in this
case, omitting court and title, reads as follows:

"For cause of action against the defendants, the plaintiffs
say: That they are the owners, each and severally in fee sim-
ple, of certain real property in the city of Topeka, an incor-
porated city of the first class, in Shawnee county, and that
said real property is within the corporate limits of said city.
A schedule containing a description of the lots owned by each
of the plaintiffs separately is attached to, filed with and made
a part of this petition, marked 'A,' and to which reference is
here made.

"In or about the year 1880 the mayor and council of the
city of Topeka caused to be constructed a general sewer, run-
ning in the alley between Jackson and Van Buren streets, from
the Kansas river south to the state-house grounds in the city of
Topeka. Said sewer is a large brick general sewer, and is now
used by all the property abutting thereon, and is also used as a
general sewer for the reception or connection of all sewers con-
structed by said mayor and council since that date, save and ex-
cept one, designated in ordinance No. 576 as main sewer district

D. A copy of said ordinance No. 576 is hereto attached, marked 'B,' and made a part hereof. Said general sewer so constructed in 1880 was paid for out of the general fund of said city, and each of the plaintiff's separate property was taxed to pay for the same.

"Certain persons in the years 1882 and 1883 constructed sewers in certain localities in the city of Topeka without any contract or authority of law, designated certain territory in said city as main sewer districts and sub-sewer districts, and the same were so designated and formed long after the construction of said sewers before mentioned, and said districts and sub-districts are not composed of the same territory as originally intended, and plaintiffs' said property is situated in said pretended main sewer districts 'B' and 'D' and pretended sub-districts Nos. 1, 2, 3, 4, 5, 6, and 7, and plaintiffs' property before mentioned has once before paid for sewers in the same territory or main district.

"Certain persons are using said sewers, whose property lies adjacent to but is not included in any of said sewer sub-districts, and which said property has not been assessed in any manner or in any sum whatever on account of said sewers. The sewers so constructed in 1882 and 1883 were negligently and unskillfully built and constructed of poor material, in this, to wit, the sewer in the alley between Kansas avenue and Quincy street in main district 'D,' from Second street to Tenth avenue, and in the east and west alley between Sixth avenue and Seventh street, and in rear of lots 40, 42, 44, 46 and 48 Eighth avenue east, in main district 'B,' are not deep enough to properly drain the lots abutting thereon, and said property is not benefited, and thereby casting a heavier burthen, to wit, the whole cost of said sewers, upon one-half the lots along said line.

"Plaintiffs further say that no cement was used around the joints of tile, and none of said sewers were tamped; that no sufficient number of T joints were put in to connect with the adjacent buildings; that no elbows were used at many of the turns, and many broken tile were used therein, thereby rendering said sewers liable to clog and fill up and become useless; that at many places in said sewers there is no grade, and water stands on the bottom of said sewers, particularly in the rear of lots 220, 222, 224 and 226 Kansas avenue, and 205, 207, 209, 211, 213 and 215 Van Buren street, and that said property is not benefited thereby; that all the sewer sub-districts are so wrongfully, illegally and unjustly formed as

33—35 KAS.

to omit a large number of valuable lots and parcels of ground which lie adjacent to said sub-districts, and are not benefited thereby, to wit, all the lots and parcels of ground on the north side of Fifth street, between Topeka avenue and Kansas avenue, and on the west side of Jackson street, from lot 167 south to Seventh street; also, all the lots and parcels of land lying on the east side of Van Buren street, from lot 168 south to Seventh street, and all the lots and parcels of ground lying between Eleventh and Twelfth streets and Van Buren and Topeka avenue; also, all the lots and parcels of ground lying on the east side of Quincy street from Second street to lot 168 on Quincy street — and by reason thereof the property of these plaintiffs bears a heavier proportion of the cost of said sewers than in justice and equity they ought to bear; that the aggregate of all assessments made for sewers in said sub-districts 1, 2, 3, 4, 5, 6, and 7, is largely in excess of the actual cost of said sewers, and largely in excess of what sewers would have cost if built for cash, and largely in excess of what said sewers are reasonably worth, and largely in excess of the benefits to said property by reason of the construction of said sewers; that the mayor and council of said city did not, before said sewers were built and constructed, have or cause a detailed estimate of the cost thereof to be made under oath by the city engineer of said city of Topeka, but wholly failed and neglected so to do; that at the time said sewers were constructed, the city of Topeka had no money or funds on hand or in its treasury with which to pay for the construction of said sewers, and that the parties who bid for the work of constructing said sewers had full knowledge of that fact at the time he or they bid therefor, and well knew that scrip warrants or other evidence of indebtedness of the city of Topeka, payable out of an empty treasury, would be issued to the person or persons for the price or cost of constructing said sewers, and by reason thereof all bids thereof for the constructing of said sewers were based or made on a scrip or credit basis, and were one hundred per cent. higher than they would have been for cash, and one hundred per cent. more than said work could have been done for cash, and one hundred per cent. more than said work was reasonably worth, all of which the said mayor and council well knew at the time they permitted said sewers to be built, and caused said scrip warrants or evidence of indebtedness of the city of Topeka to be issued as hereinafter stated; that the mayor and council of said city wrongfully and without authority of law issued scrip orders, warrants or

evidence of indebtedness of the city of Topeka to the person and persons who constructed and built said sewers, in a large amount, to wit, the sum of forty-four thousand dollars, well knowing that there was no money in the treasury of said city at that time to pay the same; that the persons holding said scrip orders, warrants or evidence of indebtedness of the city of Topeka are now claiming and demanding to be paid the sum of money so evidenced as indebtedness of said city, by scrip warrants or orders, and the mayor and council of said city have arbitrarily, without notice, and without regard to benefits conferred upon said property by reason of the construction of said sewers, and without regard to the benefits to the streets and alleys, and without regard to the benefits derived by the community at large as a sanitary measure, have charged the whole of said illegal cost of the said sewers to the property in said sewer sub-districts, and including a large sum, to wit, three thousand dollars, for grading and rip-rap at the mouth of said sewer; that the defendant Charles F. Spencer was duly elected and qualified, and is now the county clerk of Shawnee county; that defendant A. J. Huntoon was duly elected and qualified, and is now the treasurer of said county; that defendant A. W. Knowles was duly appointed and qualified, and is now the city treasurer of the city of Topeka, Kansas; that the defendant A. W. Knowles, as such city treasurer, has now on hand, or will soon receive into his possession, a large sum of money, to wit, the sum of about twenty thousand dollars, which defendant says is applicable thereto, and is about to pay a portion of said sewer scrip of 1883 so illegally issued as aforesaid, unless restrained by the order of this court.

"Plaintiffs further say that the said mayor and council of the city of Topeka have levied an assessment upon all the lots and pieces of ground in said sewer sub-districts, including the property of plaintiffs aforesaid, and the city clerk of the city of Topeka has certified said assessment to the county clerk of Shawnee county, to be by him placed upon the tax-roll of said county for collection, and for the purpose of paying for the construction of said sewers; that defendant Charles F. Spencer, the county clerk aforesaid, has placed the said assessment on the tax-roll of said county for the year 1885, and delivered the same to the treasurer for collection as aforesaid, and defendant A. J. Huntoon, the treasurer of said county, is threatening and intending to collect the same for said purpose.

"Plaintiffs say that if said defendant the county clerk is

permitted to leave said assessment upon the tax-roll of said county for collection, and said defendant the treasurer of said county is permitted to collect, or either of said defendants is permitted to do what he or they are threatening to do in relation thereto, and without authority of law, it will greatly increase the amount of taxes they will each be required to pay on their said property, and greatly injure and decrease both the rental and market value thereof, and will cast a cloud upon the several plaintiffs' titles to said real property, and have the same effect as a perpetual incumbrance on said plaintiffs' real property aforesaid, and work to each of said plaintiffs a great and irreparable injury and damage.

"The plaintiffs further say, that on the 30th day of August, 1884, the district court of Shawnee county, in a suit then pending in said court, wherein F. G. Hentig and others were plaintiffs and the clerk and treasurer of said county and the city of Topeka were defendants, No. 6266 of that court, granted a perpetual injunction against defendants, enjoining and restraining defendants from collecting the said tax in said petition mentioned, and from doing anything toward the collection of the same. And on the 24th day of April, 1885, the said court granted a perpetual injunction in a suit then pending in said court, in which H. K. Rowley, on behalf of himself, and all others in like situation, were plaintiffs, and Bradford Miller, as county treasurer, and the city of Topeka were defendants, which said suit was No. 6546, perpetually enjoining the defendants from collecting the said taxes in said petition complained of, and from doing any act or thing toward the collection of the same.

"And plaintiffs further say that this tax is levied for the same purpose and the same illegal debt as the one enjoined in the suits above mentioned, and that the property of these plaintiffs is the same, and these plaintiffs were parties to said suits, and that the first suit mentioned, to wit, No. 6266, was by the defendants appealed to the supreme court of the state, and the judgment of the said district court affirmed, and that said above-mentioned cause, No. 6546, remains unreversed, and said judgments are now good, valid and subsisting judgments against said defendants.

"Wherefore, plaintiffs pray that defendants Chas. F. Spencer as county clerk, A. J. Huntoon as county treasurer of said county of Shawnee, the city of Topeka, and each of them, and their successors in office, may be temporarily restrained and enjoined from continuing said assessment on the tax-roll

of said county, and from collecting the same or any part thereof, and from doing any act or thing toward the collection of said illegal tax, until the final hearing of this cause; and that defendant A. W. Knowles, as treasurer of the city of Topeka, and the city of Topeka may be enjoined and restrained from paying any of the said scrip warrants or evidence of indebtedness of said city mentioned herein, and known as sewer scrip of 1883; at which time said plaintiffs pray that said injunction may be made perpetual. And plaintiffs pray for other and proper relief in the premises."

The defendants demurred to the plaintiffs' amended petition upon the ground that it does not state facts sufficient to constitute a cause of action. At the January Term, 1886, the court sustained the demurrer. This ruling plaintiffs bring here for review.

*F. G. Hentig,* for plaintiffs in error.

*J. H. Moss,* and *John T. Morton,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Washington Mason and others, in the superior court of Shawnee county, to enjoin the defendants, Charles F. Spencer, county clerk, and others, from collecting certain sewer taxes levied by the city of Topeka upon certain lots in such city belonging to the plaintiffs, which taxes are alleged to be illegal and void. The plaintiffs also applied for a temporary injunction. This application was heard upon evidence, and the court below refused to grant the injunction. The defendants demurred to the plaintiffs' petition upon the ground, among others, that the petition did not state facts sufficient to constitute a cause of action, and the court below sustained the demurrer. To reverse this ruling the plaintiffs bring the case to this court.

Some of the principal facts involved in this case are reported in the case of *Gilmore v. Hentig,* 33 Kas. 156, *et seq.* After the case of *Gilmore v. Hentig* was decided by the supreme court, and on March 2, 1885, the legislature passed an act which it is claimed cures all the irregularities which occurred in the original construction of the sewers or in connection

therewith.    That portion of the act which has application to this case, reads as follows:

"Sec. 2. That in any case where any sewer or sewers have been heretofore constructed in any city of the first class by order of or under contract authorized in fact by the mayor and council thereof by resolution or ordinance, and the same shall not have been fully paid for, the mayor and council of such city shall have authority at any time to make provision for such payment by the levy of taxes upon the property properly taxable therefor at large or in the proper district as originally intended, or the issue of the bonds of such city, or the warrants or other evidences of indebtedness of such city, to amount not exceeding the amount of such principal indebtedness and interest at the rate of not to exceed seven per centum from time when same shall have been paid; or may re-fund or re-issue any bonds or other evidences of indebtedness which may in fact have been theretofore issued on account of any such improvement and then remaining unpaid." (Laws of 1885, ch. 95.)

After the foregoing statute was passed by the legislature, the city of Topeka again levied taxes to pay for the sewers mentioned in the case of *Gilmore v. Hentig,* ante; and these are the taxes which the plaintiffs now claim are illegal and void. It is claimed they are illegal and void for the reasons given in the said case of *Gilmore v. Hentig;* and also for the reason that the foregoing statute is unconstitutional and void.

It is claimed that the foregoing statute is unconstitutional and void for the reason that its passage by the legislature was the exercise of judicial power, and not the exercise of legislative power.    This point must be overruled, and there is really so little in it that we do not think it is necessary to discuss the same.

The plaintiffs also claim that the foregoing "act is unconstitutional and void for the reason that it attempts to confer corporate powers upon certain cities only, and cannot possibly at any time apply to other corporations, public or private, and is in contravention of § 1, article 12, of the constitution." This point presents a much more difficult question.    The plaintiffs refer to the case of *City of Topeka v. Gillett,* 32

Kas. 431, as authority for their claim that the statute is unconstitutional and void. The two cases, however, are not alike. In the case of *City of Topeka v. Gillett*, the legislature attempted to confer corporate powers, while in the present case the legislature intended only to cure irregularities; not to create powers, but only to remove restrictions. In that case the legislature clearly intended that the act should be a special act, while in this present case we cannot say that such was the intention of the legislature. In that case it was intended by the legislature that the act should apply, not to a whole class, but only to a portion of a class, to wit, to only three cities of the second class out of ten such cities. At that time there were ten cities of the second class in the state of Kansas, and it was possible for the act to apply to three of them and to no more, and it was not possible for the act to apply to any other city or corporation; and the act was so limited with regard to the time for its operation that in all probability it could practically have operation only as to one of such cities — a single city. In the present case, however, the act is not only general in its form and general in its terms, but it is made to apply to an entire class of cities, and a class as broad and general as any class for which any of the general laws for cities of the first class are enacted. It applies to all cities of the first class, and the time given for its operation is not limited; and any city of the first class coming within its terms may act under it, or not, as it chooses. All that the statute attempts to do in the present case is to dispense with certain preëxisting legislative requirements; to cure certain irregularities existing because of a failure to comply with such requirements, and to relieve cities of the first class from what would otherwise be the effect of such irregularities. Such an act we think is constitutional and valid. As sustaining these views, see the cases of *City of Emporia v. Norton*, 13 Kas. 569; *Tift v. City of Buffalo*, 82 N. Y. 204. In connection with the last-mentioned Kansas case we would say, that it appears from the reports of the decisions of this court that in 1871 the city of Emporia, a city of the second class, levied special taxes to

macadamize, curb and gutter a certain street. These taxes were held to be illegal and void because of certain irregularities; and this notwithstanding the fact that a *special* act of the legislature (Laws of 1872, ch. 13) had been passed for the purpose of curing such irregularities. (*Gilmore v. Norton,* 10 Kas. 491.) Afterward, the city of Emporia relieved the taxes, or rather levied other taxes of a similar character, under a *general* law passed after the improvements had been made, and passed for the purpose of curing irregularities such as had intervened in that case, and which rendered the previous taxes in that case illegal and void, which general law reads as follows:

"SEC. 41. In case the corporate authorities of any city have attempted to levy any taxes or assessments for improvement, or for the payment of any bonds or other evidence of debt, which taxes, assessments or bonds are, or may have been informal, illegal or void, for the want of sufficient authority or other cause, the council of such city, at the time fixed for levying general taxes, shall relevy and reassess any such assessments or taxes in the manner provided in this act." (Laws of 1872, ch. 100, § 41.)

This act of 1872 was enacted for cities of the second class and for them only, and it was held to be constitutional and valid, and the taxes levied under it were upheld and sustained. (*City of Emporia v. Norton,* 13 Kas. 569; *City of Emporia v. Norton,* 16 id. 236.) This act of 1872 was also in substance reënacted by the legislature of 1885, (Laws of 1885, ch. 101;) therefore the legislature of 1885 not only enacted the curative statute now in question, which applies only to cities of the first class; but it also enacted a curative statute, (said chapter 101, Laws of 1885,) of a similar character for all cities of the second class. By the enactment of these two statutes it clearly appears that the legislature of 1885 had no intention of passing special acts conferring corporate powers, as was the case when the legislature of 1875 passed the act held

1. Valid statute.

to be void in the case of *City of Topeka v. Gillett,* ante; but the legislature intended to pass only general laws.

We think that § 2 of chapter 95 of the Laws of 1885 is constitutional and valid.

This we think substantially disposes of this case. It is true that the plaintiffs have alleged a great many irregularities, but the object of the legislature in passing the foregoing statute, (ch. 95, Laws of 1885,) was to cure such irregularities, and we think they are cured. It would seem from the ordinance passed by the city of Topeka subsequent to the passage of the foregoing statute, that the city of Topeka in relevying the taxes, or rather in levying the present taxes, attempted not only to come within the provisions of such statute and of all other statutes as modified by this statute, but also attempted to come within and to comply with all the decisions of this court and all the suggestions made by this court in the case of *Gilmore v. Hentig,* ante, so far as such decisions and suggestions can apply to this case. The irregularities in the original proceedings of the city and its officers in connection with the construction of the sewers were in the main mere irregularities, mere failures to comply with certain provisions of the statutes which the legislature could have dispensed with by previous enactments if it had so chosen, and were therefore such irregularities as the legislature could waive or cure by subsequent enactment. It is a general rule that where the legislature can dispense with a thing or render it immaterial by prior enactment, it may dispense with such thing or render it immaterial by a subsequent statute. In other words, where an irregularity rendering an act of a city or subordinate agency illegal or void is simply a failure to comply with some provision of the statutes, the compliance with which the legislature might in advance have dispensed with, the legislature can by a general curative statute subsequently passed, dispense with such compliance and thereby render the act of the city or subordinate agency legal and valid. All the authorities support this proposition; and we think this case falls within them.

2. Curative statute may be passed.

As before stated, we think this case comes within the decision made in the case of *City of Emporia v. Norton,* 13 Kas.

569. That some of the lot-owners may be required to pay more than a fair proportion of the cost of constructing the sewers, will not necessarily and of itself invalidate the taxes. The taxes in the present case were levied, as we understand, in accordance with the value of the lots without the improvements thereon, in accordance with the suggestion of this court in the case of *Gilmore v. Hentig*, ante, and in accordance with the decisions of the supreme court of Massachusetts in the cases of *Downer v. Boston*, 61 Mass. 277, and *Wright v. Boston*, 63 id. 233. In cases where all the lots taxed are actually benefited by the sewers, we think that such an apportionment of the taxes must be held to be legal and valid, although in some few instances on account of peculiar circumstances or mistakes in the appraisement of the lots, some one or more of the lot-owners may have to pay more of the cost of the construction of the sewers than is fairly his or their proportion to pay. Absolute and exact justice in such cases can never be attained. In all cases some persons will be required to pay slightly more, and some slightly less, than their fair proportion. We do not understand that any of the lots taxed in this case are not benefited by the sewers. All, as we understand, are benefited more or less, though some are benefited less than others, and some less than the amount of the taxes levied upon them. The taxes, however, are only equal to the actual cost and fair value of the improvements. We might further say in this case, that the plaintiffs have not tendered any portion of the taxes levied upon their lots, and therefore if in equity they should pay any portion of such taxes, they must fail in this action. (*City of Ottawa v. Barney*, 10 Kas. 270.)

We perceive no sufficient grounds for equitable interference in this case, and therefore the judgment of the court below will be affirmed.

All the Justices concurring.