JOSHUA SANDERS, *et al.*, v. F. M. GREENSTREET, *et al.*

1. SEC. 1, CH. 127, LAWS OF 1872, *Valid; Evidence.* Section 1, chapter 127 of the Laws of 1872, (Compiled Laws 1879, p. 426, § 133a,) which purports to make executors' and administrators' deeds, made prior to the statutes of 1868, and defective according to the statutes under which they were made, but sufficient according to the statutes of 1868, *prima facie* evidence of the regularity of the prior proceedings, is constitutional and valid.

2. LEGISLATIVE POWER; *Rule of Evidence.* No party has a vested right in a mere rule of evidence, and such rules, as they only affect the remedy, are within the constitutional power of the legislature to modify.

3. ADMINISTRATION, *When Not Disturbed.* Where administration was had under the laws of 1859, in a county in which the deceased owned lands at the time of his death, and such administration was unchallenged for years, and then in a collateral attack upon an administrator's deed the district court found generally in favor of the deed, and therefore, by implication, in favor of the jurisdiction of the probate court, *held,* that this court will not disturb the finding, upon the mere testimony that the deceased some two or three years prior to his death left the land in Doniphan county, upon which he had been residing, and went to Atchison county, and there remained until his death, and without any testimony as to the intent with which he moved to that county, or the manner of his living there.

*Error from Doniphan District Court.*

EJECTMENT, brought by *Sanders* and another, against *Greenstreet* and wife. Trial at the December Term, 1878,

of the district court, and judgment for the defendants. New trial denied, and the plaintiffs bring the case here.

*Nathan Price,* and *T. W. Heatley,* for plaintiffs in error.

*A. Perry,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This was an action of ejectment, brought by purchasers from the heirs of Peter Cadue to recover possession of certain lands held by defendants under a deed from the administrator *de bonis non* of the estate of said Peter Cadue. The case turns therefore upon the validity of such deed, and two questions are presented: first, as to the effect of such deed as evidence; and second, as to the jurisdiction of the court to appoint an administrator. If the court had no jurisdiction to appoint an administrator, then of course the deed fails, and if the deed is not of itself, with the other evidence, sufficient proof of the regularity of the proceedings, and the validity of the sale, then also the defendants must fail. The case was tried by the court without a jury, and a general finding for defendants, made.

And first, as to the effect of the deed as evidence. The sale and deed were in 1865 and under the laws of 1859, and the contention of plaintiffs is, that the deed is not in conformity with the requirements of that law, and therefore worthless as evidence, and there being no other evidence of the regularity of the sale, that the finding for defendants is erroneous. The law of 1859 provided for a deed "*reciting* the order of sale," etc. (Comp. Laws 1862, p. 533, § 141.) The deed simply states that on January 2, 1865, the probate court of Doniphan county ordered the administrator to sell. No copy of the order is given. Counsel argue that the word "recite" means copy, and that no copy being given, the statute was not complied with, and therefore that the deed lacks force as evidence. We shall not stop to decide this question, for, conceding the claim of counsel to be correct, we think subsequent legislation obviates the objection. The law of

1868 provided that the deed should refer to the order of sale by its date, and the court by which it is made, and shall convey to the purchaser all the right, title and interest," etc. (Comp. Laws 1879, p. 426, § 132.) This deed plainly meets all the requirements of this statute. Subsequently, and in 1872, (Comp. Laws 1879, p. 426, § 133a,) the legislature enacted that—

"Deeds of real estate, made by executors or administrators, before the general statute of 1868 took effect, and which conform to said general statute, or which would be sufficient in form if the same had been executed in proceedings commenced after such statutes took effect, shall not be held irregular or invalid because of the omission of any recitals required by previous law; and notwithstanding such omissions, such deeds shall be held *prima facie* evidence of the regularity of the proceedings of such administrator or executor, and of the probate court, and *prima facie* evidence that the right, title and interest of the deceased in and to such land has been vested in the purchaser, under such deeds, in the same manner as if no such omission had been made."

This statute fits this case exactly. Conceding the defect in the deed under the statute of 1859, it is beyond doubt complete and sufficient under the law of 1868. The only question therefore is, as to the power of the legislature thus to modify a matter of evidence, and of the power of the legislature in this respect we have no doubt. Reason and authority both uphold it. It will be noticed that no attempt is made to declare an incomplete deed, or any deed, *conclusive* evidence. Any such statute may be open to question. It might be argued that where certain things must be done before title can be divested, no legislature can, under pretense of a mere rule of evidence, prevent inquiry as to whether such things were in fact done. (*County Seat of Linn Co.*, 15 Kas. 527.) All that is attempted is, to declare that certain instruments shall be *prima facie* evidence of prior proceedings and prior rights, and this is simply legislation affecting the remedy— merely changing rules of evidence. The effect of a complete and statutory deed under the laws of 1859 was determined by legislative enactment. Without the statute,

such a deed would not be evidence, even *prima facie*, of prior proceedings. All such would require independent proof. (*Gatton v. Tolley*, 22 Kas. 678.) The legislature which gave to such deeds such effect as evidence, could withdraw what it had given, and no one could complain. Indeed, it should be noticed here that as the law of 1859 was repealed when the law of 1868 went into force, the effect of a complete and perfect deed made before 1868 as evidence is to be determined by the latter rather than the former law, and this effect is broader and more comprehensive. The law of 1859 made the deed simply evidence of the facts stated therein; the law of 1868, "presumptive evidence that the executor in all respects observed the directions and complied with the requisitions of the law." (Comp. Laws of 1862, p. 533, § 142; Comp. Laws of 1879, p. 426, § 133.) Cooley says, in his work on Constitutional Limitations, p. 367: "A right to have one's controversies determined by existing rules of evidence, is not a vested right." Any mere matter of evidence is subject to legislative change. At least, this is true in civil cases, though in criminal cases a different rule seems to have received some judicial sanction. (*Calloway v. State*, Tex. Court of App., 21 Albany L. J., p. 216.) It can give to an instrument a larger extent as evidence, or it can withdraw from it all that it had by previous enactment. Here it first gave new force to a perfect, and then equal force to an incomplete deed. It might have given the same force to a mere certificate of the probate court, and it can at the next session withdraw from all deeds even the character of *prima facie* evidence of any prior proceedings. In the case of *Fales v. Wadsworth*, 23 Me. 553, where the question was, whether an act of the legislature providing that a notarial certificate should be evidence of things done by the notary could apply to certificates made before its passage, the court, holding that it could and did so apply, uses this language:

"But no man can have a vested right in a mere mode of redress provided by statute. The legislature may at any time repeal or modify such laws. They may prescribe the

number of witnesses which shall be necessary to establish a fact in court, and may again, at pleasure, modify or repeal such law; and so they may prescribe what shall and what shall not be evidence of a fact, whether it be in writing or oral; and it makes no difference whether it be in reference to contracts existing at the time, or prospectively."

Cooley on Const. Lim., p. 368, also says :

"A strong instance in illustration of legislative control over evidence will be found in the laws of some of the states, in regard to conveyances of lands upon sales to satisfy delinquent taxes. Independent of special statutory rule on the subject, such conveyances would not be evidence of title. They are executed under a statutory power, and it devolves upon the claimant under them to show that the successive steps which, under the statute, led to such conveyance, have been taken; but it cannot be doubted that this rule may be so changed as to make a tax deed *prima facie* evidence that all the proceedings have been regular, and that the purchaser has acquired under them a complete title. The burden of proof is thereby changed from one party to the other; the legal presumption, which the statute creates in favor of the purchaser, being sufficient, in connection with the deed, to establish his case, unless it is overcome by countervailing testimony. Statutes making defective records evidence of valid conveyances are of a similar nature, and these usually, perhaps always, have reference to records before made, and provide for making them competent evidence where before they were merely void; but they divest no title, and are not even retrospective in character. They merely establish what the legislature regards as a reasonable and just rule for the presentation by the parties of their rights before the courts in the future."

It seems scarcely necessary to add anything to these authorities. It will be noticed that this legislation does not attempt to change titles, but only evidence. It does not purport to correct defective proceedings, or to supply omissions, as in some cases it has power to do. It is in no proper sense a curative act. And yet many such acts, which are a far higher exercise of power, are within the scope of legislative authority. (*City of Emporia v. Norton*, 13 Kas. 569.) This statute does not purport to say that an order of sale may be omitted, or that the want of an appraisement is not fatal, or that a

report and confirmation of sale are unimportant. Everything that theretofore was essential to a valid sale, still remains equally essential. It has simply changed the kind of evidence which the purchaser must produce of these proceedings. Instead of proving the order of sale by a copy from the records of the probate court, it is *prima facie* established by the administrator's deed, which says that such an order was made. But the heirs are not precluded from producing the record, and showing by it the falsity of the statement in the deed. And so as to every other essential step in the proceedings. As was said in the case of the county seat of Linn county, *supra:* ." The question is not as to the effect of a fact, but the means of ascertaining it, the evidence to be received. Within certain limits the legislature has power to prescribe what shall be evidence, *prima facie* or conclusive, of any fact." Without pursuing this line of argument further, we conclude that the deed was properly received as *prima facie* evidence; and the letters of the administrator *de bonis non* having been given in evidence, the only other question is as to the jurisdiction of the probate court over the estate of the deceased.

Administration was had under the laws of 1859. Section 2 provides that "letters testamentary and of administration shall be granted in the county in which the mansion-house or place of abode of the deceased is situated. If he had no mansion-house or place of abode at the time of his death, and be possessed of lands, letters shall be granted in the county in which the land or a part thereof lies." (Comp. Laws 1862, p. 512, § 2.) As Cadue died seized of lands in Doniphan county, administration was proper in that county, unless it is shown that he had a mansion-house or place of abode in some other county. There is no pretense of any testimony that he had a mansion-house elsewhere, but the claim is that he had a place of abode in Atchison county at the time of his death, and that therefore the probate court of that county alone had jurisdiction of his estate. The only testimony bearing on this question is that of Joshua Sanders, one of the

plaintiffs, who testified that he knew Peter Cadue in his life-
time, and knew all his heirs; that he "knew Cadue while he
was living on these lands; he made some improvements. I
saw him building a house. He left there in 1857 or 1858,
and went to Kennekuk, Atchison county, Kansas, where he
afterward died. He died, I think, in the fall of 1860." And
that of Joseph Randolph, who testified that "Peter Cadue
left the land about the spring of 1857. I saw him moving
away to Kennekuk, Atchison county, Kansas." And that
of A. Perry, who testified that "Peter Cadue did not live
there after the summer of 1857." As stated, there was a
general finding for defendants. This of course implies a
finding of jurisdiction in the probate court of Doniphan
county, a finding that Peter Cadue had no place of abode in
Atchison county at the time of his death. We cannot say
that the testimony conclusively shows that this finding was
incorrect. We understand the phrase "place of abode" as
implying something more than a place of temporary sojourn:
it contemplates residence, implies permanence. A mere tem-
porary sojourn in a city, for pleasure or business, away from
one's established residence to which early return is contem-
plated, is not a "place of abode" within the purview of the
statute. Here the purpose of deceased's removal to Kenne-
kuk is not shown, nor whether he intended taking up a per-
manent residence there, or still regarded this land as his
permanent home, his legal residence. It appears from the
testimony quoted, that he built a house on this land before
leaving for Kennekuk, and it also appears from the patent
that this land was patented to him in pursuance of a treaty
with the Kickapoos, who desired that one section, "including
his present residence and improvements," be granted to him
on account of his services as interpreter. It is almost as fair
a deduction from the testimony that he had a mansion-house
in Doniphan county, and on these lands, as that he had a
place of abode in Atchison county. At any rate, after the
probate court of Doniphan county took jurisdiction and ad-
ministered upon the estate, and such action remained unchal-

lenged for years, and then, upon inquiry in the district court, a finding is made upon this testimony supporting the juris-diction, we do not feel warranted in disturbing the finding.

We have considered this testimony as though the question of jurisdiction was fully open to inquiry as an original question — but is this strictly so?

There being no other question in the case, the judgment will be affirmed.

All the Justices concurring.

VALENTINE, J.: I concur in the result reached by my brother BREWER; but I wish to say more especially, that I do not agree with counsel for plaintiffs in error, that the word "reciting," used in § 141 of the executors' and administrators' act of 1859, (Comp. Laws of 1862, pp. 532, 533,) means the same, or as much, as the word "copying" or "transcribing" does. If the legislature had meant "copying," it would have said "copying;" besides, to substitute the word "copying" for the word "reciting," makes nonsense. The words are, "reciting the order of sale, and the court by which it was made," etc. How could "the court" be copied into an administrator's deed? How would it sound to say, "copying the court" in such a case?